And we'll hear our final case of the morning, Norvell v. BNSF Railway Company. Good morning. I'm Jeff Dingwall on behalf of James Norvell who is with us here today. James is not only a lifelong railroader, but I think it's pretty safe to say that railroading is his life, going back to his little infancy of riding in locomotives with his grandfather. James was fired from his job as a locomotive engineer at BNSF after he took emergency action to save human life. And it was undisputed at trial that James did indeed take emergency action to protect human life. What James did was he stopped a train and in doing so we allege, and we believe the facts at trial prove, he saved the life of his co-worker Jonathan Reynolds who was riding on the train and potentially averted a collision in a very dangerous yard full of dangerous chemicals that could have caused an explosion mere minutes outside of downtown Portland. We also believe that the facts and the evidence demonstrate that that train, on the evening that James was operating it, had a complete brake failure. And that the only way for James to stop the train was to do what he did, which I believe is also undisputed at trial, that if the facts are what James claims, he had no other recourse other than to do what he did, which was he threw the reverser in the opposite direction of travel and hit the gas essentially. In doing so, the train stopped, everybody was safe, and the day essentially proceeded as normal. Now BNSF has a rule that says don't throw the reverser in the opposite direction of travel. There was also damage done to the locomotive as a result of what James had to do to take that emergency action to get the train to stop. So BNSF fired him for throwing that reverser, violating that rule, and damaging its train to the tune of, I believe, $25,000. But doesn't the record establish that we're on appeal now? First of all, I agree with you, and the Washington statute makes clear that you cannot, it's wrongful termination if someone is performing a duty, a public duty. And here, I think everybody agrees that they, despite the fact that this was a violation of the company's policy, that that isn't the reason. You have to show that was the substantial factor motivating his discharge. And the evidence, as I have looked at it in the record, shows that there were the reasons that he was discharged, and I understand he still has a job, right? Not with BNSF. Okay. But he was reinstated, wasn't he? Correct. Okay. So that the burden is you have to show that it's a motivating factor. And there were, the testimony was that the real reason was, and witnesses testified and the experts testified, that he was going too fast, that instead he went 10 miles an hour and he should have gone, he should have proceeded slower than that because of the circumstances, and also that he didn't use the air brakes. And so, and because of that, the district court decided to give the instruction for the company, added to the instruction about wrongful termination, which is disallowed if it is in the public interest, that the company may take into consideration whether an individual's actions created a potentially harmful situation with determining appropriate action. And that, I think, is what your objection is, is that you couldn't use that. But isn't that exactly what the evidence showed, is that the company believed that he should have, in fact, reversed, but that the real problem and the reason that he was terminated was because he was going too fast, and that there was plenty of testimony in that regard. And so that would, that additional portion to the instruction really relates to whether or not your client established the burden of proving that it was a substantial factor. So certainly BNSF presented their version of why they claimed that they fired James. Now, the issue of the reverser and the damage to the locomotive is in black and white in the letter that terminated James. Now, they also raised these issues of speed. Well, speed was never an issue prior to trial. I'm sorry, speed was never an issue? I thought that there was testimony that he was going too fast. When you say prior to trial, during trial? During trial, yes. Oh, okay. But I'm saying in the black and white letter that was sent to James saying you're fired, speed was never mentioned. The damage to the train, the reverser handle, the air brakes, and there's this dispute whether the air brakes actually apply, the air brake rule applied to the train he was operating based on the tonnage. Well, that's an important issue that was probably brought out on cross-examination. Correct. As to the question of credibility of the company, right? And certainly so there was competing, absolutely competing facts there. And so the issue then becomes what was the jury instructed to decide? And the jury was instructed to decide what did BNSF consider? What did they think about? And that's not the legal standard that's been established by the Washington Supreme Court for over 30 years, which is the substantial factor standard. And the substantial factor standard says, hey, BNSF can provide all of their reasons for termination and Mr. Norvell can provide all of his reasons for termination, and it's up to the jury to decide which one was the substantial factor. And that's been the law for 30-plus years, and as it's been established by the Washington Supreme Court, as it's set forth in the pattern instruction, it allows BNSF to do exactly what they're arguing they want to do in this case, which is present alternate reasons. And it's the same, it answers the same question that the district court had, which was he wanted to allow the defense to argue those things. And certainly they're absolutely allowed to under that law. I mean the standard provides a mechanism for that exact thing to happen. By bringing in this new consideration standard, it completely changed that, and now the jury wasn't. How did it change it? It really relates to the very issue, which is the substantial factor. And you agree with me that the company did offer evidence on those two issues. Some people did testify that he was going too fast and he didn't employ the brakes. And there was certainly testimony as well that he was not going too fast and he didn't need to apply the brakes in the manner which the rule that they accused him of would apply. So that said, when the judge added this sentence into the instruction after the close of evidence and said the company may consider something, it essentially eviscerates what comes after that, and it even eviscerates what comes before that, because now it says essentially they have an out. They have immunity. They have a defense if they merely thought about something. And it also adds a burden of proof that has never been in the law in the 30-plus years that the Washington Supreme Court has recognized this tort. And the district court made clear in his ruling on our post-trial motions that, yes, it was the plaintiff's burden to prove this issue. And that creates a whole other problem because how does one prove or disprove what BNSF did or did not think about? It's really an impossible standard for a plaintiff to overcome if the company just comes in and says, okay, yeah, we fired him, but we thought about all these things. And it's anybody's guess what those things were and how it applied to their actual decision. And so that's our argument. And really what happens then is we don't know to this day what the jury actually decided. Did the jury decide that James's actions to protect human life was a substantial factor or not? Because we have this new sentence, new and novel burden, stuck right in the middle of the instruction that says, hey, as long as they consider something, then there's a defense there. Did I answer your question? You did. Thank you. And just briefly, I want to touch on the expert issue, and then I'll save the rest of my time for rebuttal. On the expert testimony from BNSF's retained witness, Brian Heikkila, the issue there was his initial report leading all the way up to the first trial date made zero mention of the black box download data, which was 3,000 pages, 3,121. He looked at them all. And on the eve of that very first trial date, BNSF suddenly says, hey, we found this data. Here it is. We've got a continuance. We go hire an expert to review it. Two years more go by. That's because of COVID. COVID. And then there's also a couple of delays from the court schedule. But in that time when there was no reason why anybody couldn't have amended their reports or reviewed data or continued discovery, nothing happened. We disclose our expert in accordance with this new schedule based on the new trial date, and still nothing happens. Thirty days go by for rebuttal. Nothing happens. Finally, BNSF brings a motion to strike our expert. The district court says no and says, any delay is your own doing, and if you want to take a deposition, take his deposition, but that's it. They do that. They took his deposition. They took his deposition maybe 12 days before trial, and that's when now their witness comes back and says, oh, I've got this other report five days before trial, and now I have looked at this data, but yet there's zero conclusions, opinions, observations, anything in that new report about this new set of 3,000 pages worth of data he's now reviewed, and then goes to trial and almost exclusively testifies about what's in those 3,000 pages of data. And as the key piece of evidence. It was mentioned, though, that the box was mentioned in the report, and correct me, is it Hikila? Is that the? Hikila. He did mention the report that he did, right? So you could have taken his deposition about that because he did testify. I understand your point is he did testify about it, but just as the company did request to take the deposition, I think it was Mr. Scott, I guess you could have requested a deposition of their expert to see what he meant by this new reference. We could have. The problem was we were five days from trial, and the other issue was that he actually didn't have any opinions based on that data. It just was simply a line item at the top of the document saying this is something I reviewed. So there wasn't anything to depose him on, and there wasn't anything we thought he could offer at trial on that because he didn't disclose anything. Would you like to reserve the balance of your time? Yes, please. Thank you. Good morning. May it please the Court. Brian Neal for Applebee, BNSF Railway Company. Let me start with the jury instruction issue. The single sentence that's being challenged is correct. It's not misleading. There's no burden of proof issue. Should we be concerned that the jury may believe that BNSF could never be held liable if Mr. Norvell created the dangerous situation? No. In other words, does the jury instruction suggest that even if the railroad fired him in substantial part for taking emergency action to stop the train, you still win if he caused the emergency in the first place? No, I don't think so. And I think that gets to one of two fundamental problems with the appellant's argument, the first being that the appellant ignores the rest of the instruction, which goes on to say exactly what and all that he has to prove to prevail. The other problem is the appellant just misreads what that sentence said. If that sentence said something like, if BNSF considered that his conduct, that Mr. Norvell's conduct created the situation, then BNSF cannot be liable or then you must fine for BNSF, he would have a point. But that is not what it says at all. It is a general statement at the beginning of the instruction on liability that starts off saying what the law is. It's unlawful to terminate an employee for performing a public duty, and here that's taking an action to save human life. But on the other hand, a company can act on the basis of the employee causing the situation to begin with. And it's no different than in any employment discrimination case, for example. If an instruction started off saying, I'm going to tell you the general law here, it's illegal to fire an employee because of race, but it's not illegal to fire an employee because of misconduct or attendance or poor performance, whatever it is. It just sets up the law as it is that states that alternative reason that we were talking about. Now, I understand the other side may say, well, you don't need that, because the concept of an alternative reason is encompassed in the substantial factor causation test. But that's not the same as saying it's legal error to give that instruction. And the judge felt that it was important. He even said that it would have been misleading to not give the instruction precisely because of the, you know, this wasn't some misconduct like the day before he had stolen money or something like that. So the judge thought the jury needed to understand, look, your focus should be here. Did he prove that a substantial factor in the decision was this public policy protected conduct? If it was something else, even something that led to the need to take that step that he took, then the employer is allowed to do that. But you could have argued that anyway. The whole question is, is the causation of the substantial factor motivating? So did you really need that in order to basically, as you said, the jury wouldn't have understood this? I think that we did. I mean, had we not gotten it, yes, of course, I'm sure that the trial lawyer would have argued it. You know, the way this came about was— In other words, there was an instruction, of course, on causation, meaning an instruction on that the plaintiff has the burden of proving a substantial factor motivating. So there's evidence that you offered, that is, the fact that he was negligent essentially and not applying the air brakes and was going too fast. That was something you could argue to the jury anyway. That's right. But the fact that an instruction includes something additional that someone could argue, just like in a—go back to the discrimination case. You know, you don't need an instruction, but it's often given that the jury may find for the plaintiff if it finds the employer's reason to be a pretext. You know, that's something that isn't needed, but it's commonly given. And no one comes in and says, you know, certainly it's not an incorrect statement of law. It's consistent with the theory in either example. And generally, parties are entitled to correct statements of the law that are consistent with their theory of the case. It certainly advantaged your client to have that statement. I don't know that it was such a great advantage. I mean, Judge Settle felt— You offered it, but you offered it. Well, sure. I mean, this is always the hazard of going, as you know, beyond the model instructions. And whether by doing this there's some suggestion that there's either a different burden or, in this case, the railroad kind of got a bumped-up status. And so it seems to me the question is not that you can't have an additional instruction, but did it in any way undermine the integrity of the jury verdict? I don't think there's any indication whatsoever that it did that. Again, it's no—it's just saying this is illegal, this is not illegal. Now I'm going to tell you what the plaintiff has to prove to show that it's illegal. And on the model instruction point, of course, we all know those aren't binding, but the point I want to make about it is the entire first paragraph is not in the model instruction, not the part that the plaintiff proposed either. Okay. The judge had looked at the model instruction. Judge Settle looked at it and said, I don't think this is quite adequate. I think we need a little bit at the beginning to tell the jury what the nature of the law is. And that's where we came up with the first statement here and then the follow-up. It's just sort of an on-the-other-hand statement that the judge made. But, again, you know, had the—the instruction just doesn't do what the appellant says it does. You know, there have been cases where there's been an instruction that says, you know, if employer considered X, then employer wins, essentially. If it had done that, then I think, you know, they would perhaps have a point. But all it does is say the law prohibits X. It does not prohibit Y. Here's what the plaintiff has to prove. And the final point I'll make on this, absent other questions, is to tell you that the absolute best defense for giving this instruction is the one that is stated by— in two orders, very thoughtful orders by Judge Settle himself. One was the post-trial order at ER 11, and the other was a pretrial order at ER 232, the subject of which was the jury verdict form. But in the context of it, the judge talked about the legal theories. And Judge Settle walks through every one of the arguments that are now made on appeal and refutes every one and explains, no, I think I need to give this. And, you know, this was one sentence out of a page-and-a-half long instruction that BNSF offered, by the way. He said, I don't want that. I want the simpler version the plaintiff offered, except I think I've got to have something here about the nature of the law in the beginning, and I do think you have a point on this one because that's your theory of the case. But he didn't put any weight on it. He didn't say, if you considered that, if merely considering it means you win the case. He did not say that. And for the plaintiff's appellant's argument to be correct, that's what it would have needed to say. There was also a mention of it being a surprise in the sense of, it has been mentioned that it came up after all the evidence was presented. That's not the case. We refuted that in our brief. There was a pretrial conference a little over two weeks before where Judge Settle said exactly what I just said, that I'm going to give the shorter instruction, but I'm going to give you this one sentence. So that was known going into the trial. Let me turn to the expert testimony issue. In our view, the appellant greatly overstates both what happened here and the importance of it and doesn't focus on, I don't want to say omit, doesn't focus on something that I want to make sure I bring to your attention. Overall, this is the type of issue, and I hope I'm not speeding out of turn here since we have a district judge sitting with us. I think this is the kind of issue district judges deal with all the time, with this last-minute changes and figuring out how to resolve them. And what I mean by that is that what happened was BNSF designated its expert in May of 2019. He said he would testify about that the train handling was unsafe and also that Mr. Norvell should have behaved differently after it with regard to him continuing on with the regular shift. He did say he relied on the event recorder data. And as Mr. Dingwall will probably tell you what he was talking about, there was a two-page document out of a PowerPoint as opposed to what's been referred to repeatedly as this 3,100-page download. That's the tabular data. But the graph form that our expert talked about is the – one of the experts said it looks like an EKG. It's the same data but in graph format. And he had looked at that and said he looked at it from the beginning. This tabular data is something that Mr. Norvell's expert said, it depends on what your preference is. My preference, he said, is to look at the tabular format because it's a line-by-line, second-by-second report of what happened. He said that was his preference, so he asked for it. He got that at a meeting in November of 2019, so two years before trial. He got it at a meeting where BNSF's expert, Mr. Heikkila, was present. So everyone knows that the experts are there looking at that data. And then nothing happens for quite a while. Almost two years later, September of 2021, Mr. Norvell's expert, Jim Scott, submits a report where he talks about the tabular data. That's where BNSF moved to strike. And the argument was that when the tabular data issue had come up, the judge had allowed for some discovery and things that led to that meeting that I talked about, BNSF argued that's beyond what you were allowing them to do and that's beyond the designation. Judge Settle said, no, it's not. He said he would talk about this. If you want to know the details, go take his deposition. So BNSF did that. Now, in the course of opposing BNSF's motion to strike, the plaintiff said, and BNSF already has an expert on these issues, you know, being the issues that Mr. Scott was going to talk about. So the plaintiff argues and avoids having his expert stricken in part by saying, no, no, BNSF, you've already got an expert to talk about this, Mr. Heikkila.  And then the opposing side says, oh, but wait a minute, we don't want Mr. Heikkila, who we just said is an expert on these issues, to be able to talk about it. And Judge Settle, when that came up again, looked at it and said, no, same thing I told the other side. You knew he was designated. You knew he was going to talk about this. At least at some level, you could have taken his deposition. And, you know, that last-minute event is what's really missing from the other side's presentation and then that's why I say I think district judges deal with this sort of thing all the time where they have to look at it and decide, you know, what am I going to do? Am I going to postpone the trial because of this? Am I going to strike either side's expert? And Judge Settle treated both sides the same way. And then both of them go to trial and Mr. Norvell talks about the data and then Mr. Norvell's expert talks about the data. Then BNSF's expert talks about the same data. And BNSF's expert ultimately says the same things he said he would say back in May of 2019, that it was a poor train handling had caused the event and that Mr. Norvell should have behaved differently after the event occurred. So district judges are granted, properly so, wide discretion in these sorts of things. There was nothing here that was a surprise. There was nothing here that had any dramatic impact on the verdict. They're not allowed to bring in their expert a few months before trial and then keep BNSF from being able to address that testimony. Some portions of the appellant's brief suggest that, well, we didn't know exactly what he was going to say. Judge Settle said, well, if you want to know exactly what he was going to say, take his deposition. And I think that's correct because expert disclosures, you can argue, was it too broad? Was it specific enough? But they certainly don't have to give you a word-for-word transcript of what the expert is going to say at the trial. There's no case that's been cited, there's no case I've seen, that would have required Judge Settle to exclude this expert testimony. The Torres case that has been mentioned is the only one, I think, that's been cited where this court ordered the exclusion over a district judge ruling, and that was a case where there was no expert report whatsoever. The district court gave no explanation for allowing the testimony, and there, of course, was not the event we have here with a September expert report from the other side that our expert then came in and addressed. So with that, if there are no questions, I'll just ask that the court defer to Judge Settle on both of these issues that are subject to abuse of discretion review and affirm the judgment. Thank you. Thank you. Thank you. Just a quick point on Torres, which I think actually does apply here. In that case, this court said it was an abuse of discretion  And I think that's exactly what we're dealing with here, an expert witness who testified and didn't provide a report on the substance of what he testified to. And also similarly to the Torres case is the district court here gave no explanation either at trial or in his ruling on our post-trial motions as to why he allowed that testimony. He didn't address whether it was substantially justified. He didn't address whether it was harmless. He simply kind of gave the sweeping statement that it was within what was disclosed in the report but didn't even say which report. And going back to the assertion that Mr. Heikkila had in his initial report stated that he reviewed the download data, he did state he reviewed a two-page PowerPoint, which is essentially a screenshot of one moment in time of the locomotive movements. What the 3,000 pages gives us is a second-by-second that can tell us what's going on every step of the way. This graph is just simply one moment in time. It's not interactive. There's nothing you can do to really determine what's happening from moment to moment. And regardless of that reference in the report, Mr. Heikkila still offers no opinions based on the black box data, whether it's in his first report, the second one, which was the same as the first, or the third one that was five days before trial. And just quickly touching on sort of when this new jury instruction was introduced to us, yes, the district court did say in our pretrial conference, hey, this isn't final. I'm considering this language. But days later submitted or sent out the jury instructions entitled courts instructions to the jury. To all of us, it did not contain that sentence. That's in dispute here. And then jury instructions were not ever brought up, argued anything, again, until moments before the jury walked in and the judge said, hey, I'm doing this now. And with that, I think I'll be done. Thank you. Thank you for your argument, counsel. That case just argued will be submitted. And that concludes oral arguments for today. We are adjourned.
judges: McKEOWN, DESAI, Silver